Good morning, Your Honors. May it please the Court, Jonathan Libby of Pyram on behalf of the appellant Oscar Ortega, I would ask to reserve two minutes for rebuttal. Your Honors, Mr. Ortega was denied his right to a fair trial when the district court refused to grant a continuance in order to bring to court a recently located out-of-town witness who would have provided exculpatory and corroborating testimony. As a result, Mr. Ortega's conviction should be reversed and a new trial should be ordered. She would have testified that he had been in her apartment. That's correct. Just before he found the gun. That's correct. And that, therefore, when he was in possession of the gun, he had not been the man who was running up and down the street with it. Who had not been running up and down the street, running into people's homes, waving this and threatening. But he was just somebody who had the gun in his possession. That he was simply someone who had just come out of an apartment, seen this gun on the streets, picked it up, the police came upon him, and he dropped the gun. And that, you say, would not constitute possession? I don't believe the – it would, just on those facts. Why not? The elements require that he also have to know that the – that in addition to possessing it, that he knows that the barrel length is less than 18 inches. Well, that's the same issue whether he was the one running up and down the street or not. Well, but if someone is running up and down the street, presumably they have the gun in their possession long enough to know what, in fact, the weapon is and what the length of the weapon is. When he just momentarily picks it up, sees it on the street, momentarily picks it up and then drops it, it's not clear that he necessarily would know what the length of the barrel would be. And, in fact, in denying his acceptance of responsibility, the Court, in fact, said just that. That, in fact, he could have simply had a very momentary possession under these facts and that that would not be sufficient for the jury to convict him. So the fact that he went to trial and the jury rejected that argument, he wasn't entitled to acceptance of responsibility. So the Court certainly believed that the momentary possession would not have been sufficient to convict him. And that's why this particular witness was so important to Mr. Ortega. And let's not forget, just in terms of prejudice, which is one of the prongs, certainly I think the major prong here, the government then argued in closing argument in its rebuttal that Mr. Ortega testified that he had been at his girlfriend's house, but where's the girlfriend? You didn't see the girlfriend come into court. I mean, the government took advantage of the fact that the continuance was not granted to then point out that he may have been lying on the stand about being at his girlfriend's house, which went to, of course, his character. And the government's whole position was that this case was about the credibility of Mr. Ortega versus the credibility of the witness who claimed to have seen him running around the neighborhood and in and out of houses with this weapon. Now, Mr. Ortega had been diligent in trying to locate this witness. He certainly had informed defense counsel of this well in advance of trial. Defense counsel had spent five weeks trying to locate the witness, managed to get a cell phone number for the witness who, of course, had at this point moved out of town, moved to Colorado, made numerous phone calls to the witness. And it was only the witness who was having difficulty with her cell phone who wasn't able to get back in touch with defense counsel until the night before trial. This was not going to be in any way inconvenient to the Court or to the parties. We're talking about a very brief trial. The trial itself lasted three days. The day in which the continuance request was made was taken up by motions and jury selection. We had one day of testimony. We had the government had five witnesses, all of whom were local residents, four of whom were police witnesses. So this would not have been unduly inconvenient. The Court had indicated that it had cleared its calendar and that it was going to be taking – it was going to be out of town or it had a medical emergency, and so was not going to be able to resume his calendar until January. But that's precisely how long the continuance was requested to. So there would not have been any inconvenience to the Court. And the government concedes that this witness was relevant, that this, in fact, was a very important witness to the defense. And on balance, the importance of the witness and the prejudice that Mr. Ortega suffered as a result of not being able to present this witness, the continuance should have been granted. Unless the Court has any further questions on the continuance issue, I'd like to just turn briefly to some of the sentencing issues. Well, what do you make of the Court's suggestion that it would consider a reasonable and short delay in proceedings to accomplish the production of the witness? Well – And offer an offer to talk to the witness's employer? The witness, of course, was in Colorado. Right. And certainly there was not going to – I think it was somewhat of a hollow suggestion from the Court that it could help. There was no way this witness was going to be able to be brought to court by the next day. Well, I don't know. Well, not the next day. But he said he would call the employer and make arrangements. And that would be fine. What was defense counsel's response to that? Well, defense counsel, I believe, tried to follow up with the Court to get some clarification. And the Court said, no, no, I've made my ruling, you know, talk to the clerk if you want to talk to the clerk, but I've made my ruling and I don't want to talk about it anymore. So the Court – defense counsel was not able to get any clarification from the Court as to what the Court exactly was offering. But certainly – Well, the Court said it would entertain a motion for a short delay. Assume – I mean, I'm reading between the lines. If the Court thought there was a reasonable possibility the witness could appear. Well – I mean, what it seemed to call for was a further follow-up by the defense counsel. Well, as I said, defense counsel attempted to follow up the Court to get some clarification. Not from the Court, but with the witness. Well, sure. I mean, defense counsel spoke with the witness just 30 minutes before the motion was made. Right. You know, the defense counsel had been in touch at that point with the witness. And the witness certainly made clear that she would be able to come to court, but she had just started her training program and it would be difficult for her, one, to get out of work that soon, and two, to get to Los Angeles. She's in Colorado. You know, the Court wanted to proceed with trial then. You know, not a week from then. I mean, the Court said a week from then would not have been possible. The Court was going to be away a week after that. So this – I mean, a short continuance, I believe, the Court was talking about, may be a day. It was a week. Though, again, the Court was very concerned about the fact that it said it had cleared its calendar for that week. That's when the Court wanted the trial to take place. It would not have been possible for this woman to get from Colorado, given her circumstances, to Los Angeles within a day or two. It just was not possible. Two and a half hours from Stapleton to LAX, right? Maybe two hours. Some people got from Colorado to trial and back and forth very quickly last year. I do recall that. But with a great deal more resources than the Federal Public Defender's Office has to bring the witness to court. It certainly just would not have been possible under the circumstances. Well, he didn't ask for a continuance until the day of the trial, did he? That's right. And that's because the witness did not get back in touch with defense counsel until the evening before trial. This was the very first opportunity defense counsel had to request a continuance. He did. I mean, he walked into the courtroom, made his appearance, and said, Your Honor, I'd like to request a continuance because of this. So the very first opportunity he had, he requested the continuance. Well, why couldn't he ask for a continuance two weeks ahead of that time or three weeks or four weeks and say, I'm trying to locate a witness and I can't find him? Well, I mean, there had not been any proceedings with the Court at that point for about six weeks or so. But he could still file a motion. I beg your pardon? He could still file a motion. He could have filed a motion. I mean, there was a – the case had already been continued once and was continued to this date. There had not been multiple continuances. This would have been the next opportunity, the next, I mean, the equivalent of a status conference or trial to proceed, and the Court wanted to go to trial. But obviously, defense counsel was not entirely sure he was going to be able to locate the witness and did not want to necessarily tip his defense to the prosecution. And if the witness was not going to be found, then it would have made no point to have brought this up, since it could have altered his trial strategy, which he did not want to let the government know about. I see I have very little time. Well, we'll give you a couple of minutes on the sentencing issue. Do you want to talk about the conditions of the probation? We can talk about the conditions, certainly. I would note, I believe under Ameline, at a minimum, this should be entitled to at least limited remand. With respect to the conditions, these are special conditions of supervised release, which means that they must be narrowly tailored based on a particular fact and circumstances of the case. The least restrictive means necessary, conditions necessary to achieve the goals of supervision are what have to be imposed. Now, here, we have no idea why the Court imposed these particular conditions. No explanation was given by the Court. Usually, we have a recommendation letter from the probation officer which provides an explanation. That was not turned over to defense counsel. The Court expressly indicated it was not going to provide that confidential letter to defense counsel. So we have no idea why the Court imposed these conditions. And when you look at the conditions, specifically participation in outpatient substance abuse treatments, there is nothing in the record to indicate that Mr. Ortega had a substance abuse problem. He indicated that he had consumed alcohol once every couple of months, tried marijuana one time when he was 17 many, many years ago, and that he last drank alcohol about two years prior to this. There was certainly nothing in the record to indicate that substance abuse treatment was necessary. The Court also required that he abstain from using alcohol completely, which is well beyond the discretionary condition, which prohibits the excessive use of alcohol while on release. But this prohibits his use of alcohol completely. Again, nothing in the record that you need. It shouldn't be much of a burden since he only has a drink once every couple of years. Well, that's true. But what if he does? And why shouldn't he be able to have a drink? You know, there's no reason why he shouldn't be able to have a drink. I guess it's important to him since he's – it's important to him to drink. Take your pardon? It must be important for him to have the freedom to consume alcohol since you're raising him. If he happens to be at a party and has a drink and the probation officer comes upon him and sees him having a drink, he'll be violated. And why? There's no reason. I think, though, in seriousness, that the problem here is that these conditions may have been imposed as a matter of rote, but there was no objection at the time. And so it's difficult for us to fault the district court for not going through the analysis, right? That's true. I believe some courts have said in terms of analyzing it when it's kind of a surprise to the defendant that the – I believe the Second Circuit, and I don't have the case name, has said you don't necessarily apply the true plain error analysis. It's one thing if, in fact, you've received the recommendation letter from the probation officer. You know this is coming up, so you have advance warning of it, and you have an opportunity to object. Here, it was simply imposed at the end of the sentencing hearing after the sentence of incarceration has already been imposed, and people, very honestly, are not paying very close attention at that point. And since there was no advance warning of this, I think you don't have to apply the exacting plain error standard and simply say, look, these conditions simply don't relate to anything here. The Court gave no indication for why they should be imposed. And at a minimum, we should vacate these conditions and let the district court give some reason for imposing the conditions if it wants to do so upon remand. But beyond that, there's just no reason for these conditions. I think this Court can say there's simply nothing in the records to support these  Thank you, Your Honor. Thank you.  May it please the Court. My name is Sherilyn Garnett. I represent the United States in this case. Do you agree that there should be a remand here for resentencing under Booker? No, Your Honor. The nature of the error, if there is an error in this case, was not a Booker error. No enhancements were applied to the defendant's sentence under Booker or Blakely. So the nature of the error would have been the Court's treatment of the guidelines as mandatory as opposed to advisory. And this circuit has not addressed what the proper procedure is when we're dealing with a nonconstitutional error. The Court just decided in Line 3 where they were dealing with a Booker error, and they held that where the Booker error is not preserved and it's sufficiently unclear what the sentence would have been the same or materially different if the, I'm sorry, whether the sentence would have been materially different under a plain error review, then a limited remand is necessary. But again, in footnote 8 of that decision, which was issued June 1st, the Court makes clear that it's dealing strictly with a Booker error and not a nonconstitutional error as is the case in this case. So this circuit has not addressed the issue. This issue was raised for the first time in the reply brief. And to the extent that the Court wants to entertain it, the government would ask for supplemental briefing. If the Court does not want supplemental briefing, then the government would submit that the appropriate analysis would be that of the Tenth Circuit in a case recently decided. In that case, the Tenth Circuit took the approach that a nonconstitutional error requires a higher standard. What does the Second Circuit do? I believe the Second Circuit treats the constitutional error and nonconstitutional error the same, and maybe as well the Seventh Circuit. But again, the government has to follow the Second and the Seventh Circuit in Ameline. And we've got a lot of choices, a lot of circuits to choose from. That's why the government would request supplemental briefing on that particular issue. I think we probably had lots of briefing on this, probably lots of cases around with these issues. Well, Ameline just came out just recently. Well, it took a long time, probably the longest time of all the circuits. Yes. But again, this circuit hasn't even addressed the particular issue in this case. So you think the issue is whether or not, if the district court doesn't impose an enhancement, that a Booker remand is required? Or you frame it differently? I'm framing it as a nonconstitutional error. So Booker doesn't apply because that dealt with the Sixth Amendment analysis. Neither does Blakely or Ameline. And this issue has not been addressed in this particular circuit because, again, no enhancements were applied to the defendant's case. I see. So, again — Well, if you — if this Court would hold that the alcohol or drug-related supervised release conditions were in error, then it would have to go back for a resensing, right? Correct. But the government's position is it's plain error analysis, and the defendant simply has not proved that the imposition of those conditions rose to the level of plain error. If the Court wants me to address that particular issue, I can. But do you really object to a modification of the conditions? In this context, yes. Why? Because there was — the Court had to look to the history and characteristics of the defendant, as well as the other factors set forth in 3553A. And in this case, in the PSR, there was ample evidence of the defendant's prior arrests and convictions related to drug offenses, as well as his public intoxication. So there was evidence in the record to demonstrate that the particular conditions of supervised release — No specific evidence of drug use, but evidence of alcohol abuse in this case. How long before the offense? I'm sorry? How long in the past, how long before the offense was the alcohol abuse? I believe that was a 2000 — I believe it was a 2000 arrest. I have to make sure, but I believe it was as recent as 2000 that he was arrested for public intoxication. We can say as recent as or as long ago as 2000. As recent as. There's no time conditions in 3553. The Court can consider all of it. And as long as the conditions are reasonably related, in this case, they were. And when was this sentence imposed? December 2004, I believe. If there are no further questions on that issue, I'd like to address the issue of the continuance. In this case, the Court did not abuse its discretion. Its actions were reasonable under the circumstances, given the factors and the facts that were set forth by the defendant at the time of the request for denial. The Supreme Court in Unger v. Serafit said that this Court should look to the reasons given by the defendant at the time of the request. And in this case, the defendant made his request on the day of trial. Defense counsel just stated that there were no other opportunities to make this request. But I'd like to point out in the excerpt of record that the parties appeared before the Court one week before trial. The trial was December 2nd. The parties appeared before the Court on November 20th for the specific purpose of determining whether the parties were ready for trial. And during that status conference, the district court asked the parties if they were ready to proceed, and the defense answered yes, it was ready to proceed. If the Court takes, believes the representations of defense counsel, by that time, defense counsel already knew that there was this witness out there and that they were having difficulties finding the witness. And at that time, the defense counsel and defendant could have requested a continuance, but they said nothing. And so they waited until the day of trial. And so at the time they made the request at the day of trial, the Court was faced with a position where the Court had requested juries. The government had prepared for trial. Defendant had not shown any diligence in obtaining the witness. Defendant had only, he'd been, from the time of his arrest to the date of trial, five months had elapsed. And he had only provided his counsel a witness's phone number three weeks before trial. And he told his defense counsel the witness's last name the day before trial. So he simply had not shown any diligence in trying to obtain the witness. The one thing that is disturbing is the government's use of the absence of the witness as a factor in the trial. In other words, the government objects to the continuance, and then when the Court says you can't go get the witness, it says, you see, he couldn't produce a witness. That's troubling. The government did say that it was an issue of credibility, but I'd like to point out that this was one aspect of the government's entire closing argument. The issue here was simply whether the defendant knowingly possessed the weapon. The issue of his possession was not in dispute. He admitted that he possessed the weapon. He also admitted in his Mirandai statement to the police. So the only issue is whether that possession was knowing and intelligent. The government's theory to prove knowing sort of encompassed three separate periods. The first was that the defendant knowingly possessed it at the time he was running through the neighborhood and Mr. Pena saw him. The second was that defendant possessed the weapon at the time that Mr. Pena saw him in front of the apartment with the weapon. Defendant didn't dispute that Mr. Pena saw him at that time. And then the third was when the two officers saw the defendant with the gun concealed in his pants. The witness's testimony only went to the first aspect of the government's theory, because the witness, according to the defense counsel's representation was that she could put the defendant in the house at the time that Mr. Pena said he saw him running in the streets. But the defendant could still be convicted based on the fact that Mr. Pena saw him a second time standing in front of the apartment complex, which defendant never disputed at trial. What the defendant put at issue was whether or not he picked up the gun by mistake or ignorance. He testified. He took the stand and testified that he picked up the gun because he thought it was a toy or an antique. And that's what he put at issue in the trial. The court specifically instructed the jury that the only way they could find him guilty is if he did not pick it up by mistake or ignorance. Specifically, it said in order to possess the weapon knowingly, the defendant had to be aware of the fact that he was possessing it and not act through ignorance or mistake. So that was the real issue. So with respect to this witness and the lack of a witness, the jury could still convict the defendant if they believed that he didn't possess it by mistake or fact. And in light of the defendant's lack of diligence, in light of a valid ruling by the court that four-week continuance was not warranted, but a shorter continuance could have been warranted, but the defendant never made the use of that, in light of all those circumstances, the government, when it saw that the defendant didn't even make any further attempts to obtain the witness, thought it was entirely appropriate to address that particular issue. But again, it didn't result in prejudice because the real issue was whether the possession of the weapon was a mistake or due to ignorance. If there are – does the Court want to address the question? I see I'm out of time. Is there anything specific the Court would like to address, need to address at this point? Do you – you're saying there was no prejudice from the comment that they didn't bring the witness here? Not when the Court takes the totality of the circumstances. But you don't – I assume don't defend the comment as being a proper comment. I do, actually, defend it as a proper comment, because the Court bent over backwards to allow the defendant to get this witness. It only denied a four-week continuance. Did you tell the jury that the defendant wanted a continuance to bring this witness and the Court wouldn't grant it? No. And you gave the Court the opposite impression, that there was no such person or he would have brought it. I did. But again, in the context of my entire closing, Your Honor, and in the context of the defendant's lack of diligence in obtaining the witness, I believe a comment was appropriate. And again, the issue was whether or not he possessed the weapon due to a mistake. And the Court in the sentencing case is the same. Well, you didn't say to the jury that that witness was immaterial. No, I did not. You suggested that it was – the story was not true or he would have had the witness there. What I did say was that it was an issue of credibility. Either you believe Mr. Pena and the officers or the defendant. But the jury could have disbelieved Mr. Pena. No, that part, yes. That part there's no question about. But what did you say about the witness? You said it's an issue of credibility. Either you believe Mr. Pena or Mr. Ortega or you believe the officer. And how does the comment about the witness fit into that? What I said was that the officers testified that they saw the defendant concealing their own weapon on his person, that Mr. Pena testified that he saw the witness with the gun on his person, and that the defendant was the only person who said that he didn't have the weapon or that he possessed it by mistake. The only other witness he referred to was his girlfriend in his testimony. So by your comment, you're implying that she was out there and she was either unwilling or he couldn't bring her to court. I did not talk about the girlfriend. No, no, you said he doesn't have any witnesses, but the only witness that he mentioned was the girlfriend. That's correct. But, again, his defense was that he picked it up by mistake or accident. No, I understand the entire why you might think it's harmless error if it's error, but it's a bit unfair to make the comment. And it was unnecessary if, as you say, you had plenty of other evidence. All right. Thank you. All right. Thank you. Your Honor, with respect to Ameline, as I read Ameline, a remand does apply also to cases in which nonconstitutional error occurred as well in order to ensure the remedial portion of Booker is applied, to give district courts the opportunity to determine whether or not they would have made a material difference in the sentence had they known that the guidelines were, in fact, advisory rather than mandatory. And that's how I read Ameline. It doesn't apply to cases in which there was constitutional error. But in this case, the only thing at issue was the downward adjustment request for acceptance of responsibility, right? Well, no. There were also downward departure requests, one of which was based on his health, because he did suffer from he had a colostomy bag, he had just undergone surgery, and, in fact, the Court expressed a great deal of concern but indicated that this was not extraordinary. And under the guidelines, in order to grant a downward departure, the Court had to found that this was an extraordinary impediment. Now, it's an advisory guideline scheme. It's not clear the Court wouldn't grant a lower sentence under those circumstances. So it's certainly possible the Court forgave him. So you have acceptance, responsibility, downward departure, anything else at issue? In terms of the sentencing. No. Okay. No, that was it. And just in terms of the conditions, of course, drug sale, arrest is not the same as drug use. And the alcohol, the public intoxication, that was an arrest, not a conviction. The case was dismissed. He did not have a conviction for public intoxication. And he also put rock cocaine in his mouth, right, when he was arrested, one of his arrests? That's not my recollection, Your Honor, but if that's what you see. But he certainly did not have a conviction for any of that. So unless the Court has any additional questions, I would submit. Is he ‑‑ what's his status now? He is in custody. His release date, projected release date is March 27th, 07. Okay. Thank you. Thank you, counsel. The case just argued will be submitted.
judges: Lay, Reinhardt, Thomas